**SO ORDERED: May 31, 2007.**



_____
**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BILLY JOE SCROGGINS, | ) | Case No. 05-93556-BHL-7 |
| a/k/a B.J. SCROGGINS, | ) | |
| f/d/b/a SCROGGINS | ) | |
| CONSTRUCTION, INC., | ) | |
| d/b/a LADY LIBERTY HOMES, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM R. BISHOP and | ) | |
| DEBORAH BISHOP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No.  05-09090 |
| | ) | |
| BILLY JOE SCROGGINS, | ) | |
| a/k/a B.J. SCROGGINS, | ) | |
| f/d/b/a SCROGGINS | ) | |
| CONSTRUCTION, INC., | ) | |
| d/b/a LADY LIBERTY HOMES, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**JUDGMENT**

This matter comes before the court on the **Claim for Non-Dischargeability** (the "Claim") filed by the plaintiffs on December 16, 2005. The defendant filed his **Answer**, *pro se*, on February 28, 2006. The defendant retained counsel who filed his appearance for the defendant shortly before the trial on November 6, 2006.

A. Background

The plaintiffs complain that debts arising out of a contract for the defendant to sell, deliver, and set a modular home should be found by this court to be nondischargeable in the defendant's underlying bankruptcy case pursuant to 11 U.S.C. § 523(a)(6). (Claim ¶16.) Section 523(a)(6) states that

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt - (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(6). The plaintiffs allege that the defendant never ordered the home described in the contract, but performed a "bait and switch" scheme, inducing the plaintiffs to accept a model different from the one described in the contract. The plaintiffs reference the Indiana statute on deceptive acts which provides, in pertinent part, as follows:

> I.C. 24-5-0.5-2(a)(8): Incurable deceptive act means a deceptive act done by a supplier as a part of a scheme, artifice, or device with intent to defraud or mislead.
> I.C. 24-5-0.5-3(a)(2): That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.
> I.C. 24-5-0.5-3(a)(10): That the supplier is able to deliver or complete the subject of the consumer transaction within a stated period of time, when the supplier knows or should reasonably know he could not. If no time period has been stated by the supplier, there is a presumption that the supplier has represented

2

> that he will deliver or complete the subject of the consumer transaction within a reasonable time, according to the course of dealing of usage of the trade.

The court, having heard plaintiffs' counsel's arguments at trial, and in light of the Indiana Code referenced in the Claim, the will consider the plaintiffs' objection to discharge of the relevant debts as one under § 523(a)(2) which excepts from discharge debts arising from false pretenses, false representations, or actual fraud. Specifically, § 523(a)(2) states

> a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt - (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by - (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

The distinguishing feature of a Chapter 7 bankruptcy proceeding for an individual debtor is the discharge: after surrendering his non-exempt property for the benefit of his creditors, the debtor is discharged from what remains of most of the debts he owed as of the date the bankruptcy petition was filed. Matter of Turner, 156 F.3d 713, 717 (7th Cir.1998) (citing 1 Robert E. Ginsberg & Robert D. Martin, Ginsberg & Martin on Bankruptcy § 12.01, at 12-4 (4th ed. rev.1998)). The primary purpose of the bankruptcy discharge is to give the debtor a "fresh start." In re Chambers, 348 F.3d 650, 653 (7th Cir.2003). The benefits of this fresh start policy, however, are limited to the "honest but unfortunate debtor." Peterson v. Scott   (In re Scott ), 172 F.3d 959, 966-67 (7th Cir.1999) (citing Grogan v. Garner, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).  The Bankruptcy Code provides for exceptions to discharge when a debtor has been less than honest.  But, in keeping with the fresh start goal of bankruptcy, those exceptions are " 'constructed strictly against a creditor and liberally in favor of the debtor.'

3

" Goldberg Sec., Inc. v. Scarlata (In re Scarlata ), 979 F.2d 521, 524 (7th Cir.1992) (citations omitted); see also In re Juzwiak, 89 F.3d 424, 427 (7th Cir.1996). Additionally, a party seeking to establish an exception to discharge bears the burden of proof by a preponderance of the evidence. Grogan, 498 U.S. at 291.

Section 523(a)(2) lists three separate grounds for denying the discharge of a debt: false pretenses, false representations, and actual fraud. In the Seventh Circuit, the elements necessary to prove actual fraud are slightly different from those necessary to show false pretenses or false representations. McClellan v. Cantrell, 217 F.3d 890, 894 (7th Cir. 2000).

### 1. False Pretenses or False Representation

In order to except from discharge a debt obtained by false pretenses or a false representation, the plaintiffs must establish by a preponderance of the evidence that: (1) the defendant made representations to the plaintiffs (2) that he knew to be false (3) with the intent and purpose of deceiving the plaintiffs, (4) that the plaintiffs justifiably relied on his representations, and (5) that the plaintiff sustained a loss or damage as the proximate consequence of those representations. 4 Collier on Bankruptcy ¶ 523.08[1][e] (15th ed. 2006); see also, Mayer v. Spanel Int'l Ltd. (In re Mayer), 51 F.3d 670, 673 (7th Cir. 1995). Because the plaintiffs must establish each of these elements by a preponderance of the evidence to support a finding of a false pretense or false representation, their failure to establish any one of them is determinative of the outcome.

### 2. Actual Fraud

The analysis is different when a plaintiff alleges actual fraud. The court in McClellan reasoned that "[because] common law fraud is not always in the form of a misrepresentation, a

plaintiff need not allege misrepresentation and reliance thereon to state a claim for actual fraud under § 523(a)(2)(A). [B]y distinguishing between 'a false representation' and 'actual fraud,' [section 523(a)(2)] makes clear that actual fraud is broader than misrepresentation. Collier's treatise, while assuming ... that 'actual fraud' involves a misrepresentation, defines the term much more broadly [than misrepresentation] – as 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another....'" McClellan, 217 F.3d at 893.

Accordingly, the plaintiff alleging actual fraud must demonstrate that: "1) a fraud occurred; 2) the debtor was guilty of intent to defraud; and 3) the fraud created the debt that is the subject of the discharge dispute." In re Jairath, 259 B.R.308, 314 (Bankr.N.D.Ill.2001), citing McClellan at 893-94. Again, the plaintiffs must establish each of these elements by a preponderance of the evidence. Grogan, 498 U.S. at 291.

C. Discussion

With these distinctions in mind, the court must evaluate the evidence and testimony adduced at the trial and determine whether the plaintiffs proved that it is more likely than not that the defendant's conduct met each of the elements necessary for a finding of either false misrepresentation or actual fraud.

As the court noted at the conclusion of the trial, the question then is not about the condition of the plaintiffs' home, or the degree to which they believe it falls short of their understanding of their bargain with the defendant. The question is whether the defendant's actions in procuring the last draw on the plaintiffs' construction loan fit within the definition of an act of fraudulent misrepresentation or actual fraud.

First, there was no "bait and switch" as alleged in the plaintiffs' in paragraph 8 of the Claim. It is clear to the court that, advisedly or not, Mr. Bishop signed in blank the "Owner's Authorization" for draw request (Plaintiffs' Exhibit 5) on or about May 1, 2004, at the time he entered into the original purchase contract (Plaintiffs' Exhibit 1). This contract was never fully performed by either party because the plaintiffs could not get financing for the price of the unit described in the original contract. An arrangement was made, apparently between Mrs. Bishop and the defendant or the defendant's father or brother, to deliver a unit that the plaintiffs could qualify to finance. That new arrangement, probably a substituted contract and novation of the original purchase contract, was not reduced to writing. As to what, exactly, its terms were there is no agreement between the parties and, though the subject took up the majority of the time at trial, the court can still not definitively say. Nevertheless, both parties seem to have relied upon their own understanding of this agreement as a modification of the original contract between Mr. Bishop and Lady Liberty Homes. Given this reliance by both sides on their own interpretation of a largely undocumented agreement comprised of, at least, 1) the original contract (Plaintiffs' Exhibit 1), 2) an illustration of the replacement model agreed upon by someone at Lady Liberty Homes and Mrs. Bishop (Defendant's Exhibit A), 3) the list "of several things that Lady Liberty Homes has verbally agreed with Deb Bishop to do on her home" (Plaintiffs' Exhibit 3), 4) and the various verbal exchanges between the parties.

The court is not convinced that there was a true "meeting of the minds" as to any material element of these agreements, modifications, or illustrations, except, perhaps, the original, and as it turned out, impossible contract. While there was no new written contract or Owner's Authorization drafted or signed for the substituted home that the defendant's company delivered

6

and set, it does not seem unreasonable that the defendant should have used the original Owner's Authorization signed by Mr. Bishop for making the draw that the plaintiff agreed to in the original agreement.

The defendant testified that it was his understanding that the bank followed procedures to verify that the conditions precedent to releasing funds on a contractor's draw request were met: namely, that the home had been delivered, and that the home owner had in fact authorized the draw. The plaintiffs claim that they did not, and would not have authorized the final draw due to the incomplete items they understood were to be completed.

That the house that the plaintiffs received is not what Mr. Bishop originally contracted for, there is no doubt. That it is not what they expected according to their understanding of the later substitutions and agreements is also probably true. But the plaintiffs have not met their burden to show by a preponderance of the evidence that the defendant intended to deceive the plaintiffs or to commit an act of fraud when he submitted the Owner's Authorization signed by William Bishop. Without a demonstration of an intent to deceive or defraud by the defendant, the plaintiffs cannot meet either of the tests under section 523(a)(2) of the Bankruptcy Code.

D. Conclusion

Accordingly, the Court finds that **JUDGMENT** should be and hereby is entered in favor of the defendant.

###

Distribution:
Defendant's Counsel
Plaintiffs' Counsel
Chapter 7 Trustee